IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NIBCO INC., IN ITS CAPACITY AS THE SPONSOR AND ADMINISTRATOR OF THE NIBCO INC. PROFIT SHARING AND 401(K) SAVINGS PLAN,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FUNDS SERVICE COMPANY, and THE GROWTH FUND OF AMERICA, INC.,<br><br>Defendant(s). | CASE NO. 1:09-cv-0319 WTL-TAB<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS** |

**<u>DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS COMPLAINT</u>**

Defendants American Funds Service Company ("AFS") and The Growth Fund of America, Inc. ("TGFA"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and S.D. Ind. L.R. 7.1(a), respectfully submit this Reply Brief in support of their Motion to Dismiss Complaint.

**I.**

**INTRODUCTION**

Plaintiff's Response to Defendants' Motion to Dismiss confirms that this is a classic case of a plaintiff that wants to have its cake and eat it, too. Plaintiff submitted a redemption order for its mutual fund shares on April 30, 2008, and obviously intended to receive the April 30 price for those shares. But when the processing of the order was held up because of an apparent clerical error by Plaintiff's trustee—the redemption order's listing of fractional shares was incorrect by less than one half of one share—and the market went up the following day, Plaintiff now wants

the May 1 price, even though Plaintiff's trustee correctly confirmed to AFS that the order should be priced at the April 30 price. *See* Complaint ¶¶ 17-18. Had the price instead gone down on May 1, Plaintiff no doubt would be insisting that it receive the April 30 price. In other words, Plaintiff wants to be able to have made a riskless bet, choosing after the race was run which horse to bet on—*i.e.*, April 30 or May 1, based on which day ended up with the best price.

SEC Rule 22c-1 was enacted precisely to prohibit this type of conduct. To prevent parties from taking advantage of market volatility in exchanging mutual fund shares, SEC Rule 22c-1 requires that the shares must be redeemed "at a price based on the current net asset value of such security which is next computed after *receipt* of . . . an order to purchase or sell such security." 17 C.F.R. § 270.22c-1(a) (emphasis added); *see DH2, Inc. v. United States SEC*, 422 F.3d 591, 593 (7th Cir. 2005) (the rule was implemented in part to "reduce riskless short-term trading in mutual funds by eliminating the ability to use late-breaking news to take advantage of NAVs fixed before that news was released").

After receiving an order redeeming shares, a mutual fund company has three additional days to "settle" the transaction. 17 C.F.R. § 240.15c6-1. The Complaint admits Defendants *received* the Plan's initial order to redeem its mutual fund shares on April 30, 2009 (Complaint ¶¶ 17-21); accordingly, by law, Defendants were required to price that transaction based on the Net Asset Value ("NAV," *i.e.*, the "price" of a mutual fund share) calculated on April 30, 2009, and then had three days to process and complete the transaction. That AFS used one of those three additional days to inquire whether the Plan intended for *all* of its shares, even the incorrect fractional amount due to a clerical error, to be redeemed does not affect the legal significance of *receiving* the sale order on April 30, 2008. Defendants *had* to price the order as of the NAV calculated for April 30, 2008.

Plaintiff is simply grasping at straws in attempting to portray Defendants as *de facto* ERISA fiduciaries. First, any control or authority Defendants exercised over the Plan's assets as a result of the Plan's investment in Defendants' mutual funds cannot be the basis for a breach of fiduciary duty claim under ERISA. *See* ERISA § 3(21)(B); 29 U.S.C. § 1002(21)(B) ("If any money or other property of an employee benefit plan is invested in securities issued by an investment company . . . such investment shall not by itself cause such investment company or such investment company's investment adviser or principal underwriter to be a fiduciary . . . ").

Second, a Plan's "directed trustee," *not* Defendants, has "*exclusive* authority and control over the Plan's assets." ERISA § 403(a); 29 U.S.C. § 1103(a) (emphasis added). In this case, Wachovia Bank, National Association ("Wachovia"), the Plan's stated, directed trustee, acted with exclusive *authority* and control over the Plan's assets by *authorizing* Defendants to redeem the Plan's shares as of the April 30, 2008 NAV. Complaint ¶ 13. Plaintiff admits as much. *See* Response at 13 ("Exhibit A [a letter from Wachovia to Defendants] does refer to an "*authorization*.") (emphasis added); *see also* Motion to Dismiss, Exh. A ("[P]lease use this letter as your *authorization* to settle the following [accounts] . . . as of 04/30/2008.") (emphasis added).[1]

Third, the actual factual allegations (and not the legal conclusions)[2] in Plaintiff's Complaint demonstrate that Defendants performed simple, ministerial tasks at the direction of the Plan's trustee by exchanging one Plan asset (the securities) for another (cash) and

---

[1] That Defendants required written authorization from the Plan's trustee demonstrates that Defendants were simply following orders and *not* exercising authority or control over Plan assets.

[2] The Court is "not bound to accept as true a legal conclusion couched as a factual allegation" for purposes of a Motion to Dismiss. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

transmitting those assets back to the Plan's trustee.  29 C.F.R. § 2509.75-8, D-2 ("[A] person who performs purely ministerial functions . . . for an employee benefit plan . . . is *not* a fiduciary.") (emphasis added); *accord Schmidt v. Sheet Metal Workers' Nat'l Pension Fund*, 128 F.3d 541, 547 (7th Cir. 1997).  Accordingly, Defendants were *not* ERISA fiduciaries.

In sum, Plaintiff has attempted to craft a cause of action out of whole cloth to take advantage of an opportunity created by market volatility and the apparent clerical errors and decisions of its Plan's trustee.  Indeed, Plaintiff is pursuing a claim against the trustee in arbitration, pursuant to an arbitration agreement.  But Plaintiff as a matter of law cannot state a claim against Defendants AFS and TGFA under the facts of this case.  Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

## II.

### PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

The Complaint should be dismissed for two central reasons.  First, Plaintiff's claim fails as a matter of law because, according to the Complaint and the documents referred to therein, Defendants first *received* Plaintiff's liquidation order on April 30, 2008, and Defendants executed the liquidation order based on the NAV next calculated after *receipt* as required by law.  Because the law required Defendants to price the liquidation based on the NAV calculated on April 30, 2008, Defendants could not have breached any ERISA fiduciary duty.

Second, according to the Complaint and the documents referred to therein, Defendants did not act with the requisite authority or control over the Plan's assets such that they were an ERISA fiduciary.  Defendants, therefore, could not have breached an ERISA fiduciary duty under these facts.  Plaintiff's Complaint should therefore be dismissed with prejudice.

A.  **Defendants Followed The Applicable SEC Rules.**

The Complaint alleges that AFS *received* Plaintiff's liquidation request, prepared and transmitted by Wachovia, on April 30, 2008. Complaint ¶ 17. As explained fully in Defendants' Motion to Dismiss, SEC Rule 22c-1 *requires* Defendants to price that redemption order "at a price based on the current net asset value of such security which is next computed after *receipt* of . . . an order to . . . sell such security[.]" 17 C.F.R. § 270.22c-1(a). This case is thus very simple: Defendants received an order to sell on April 30, 2008 (Complaint ¶ 17), and it had to, by law, price that order based on the next-calculated NAV, which Plaintiff admits AFS did (Complaint ¶ 21). Consequently, Plaintiff cannot state a claim for breach of fiduciary duty under ERISA.

Plaintiff's arguments to the contrary demonstrate its fundamental misunderstanding of how mutual fund trading and the SEC Rules operate. Plaintiff argues that Defendants actually violated SEC Rule 22c-1 by not pricing the sale order based on the May 1, 2008 NAV because that is the date Defendants received "a corrected liquidation order." Response at 7. Plaintiff's argument is premised on the belief (Plaintiff cites no legal support) that under the applicable SEC Rules a mutual fund may ignore or reject a valid sale order (that may contain a clerical error) it receives. Complaint ¶ 17.

Plaintiff does not allege that the order was invalid; rather, Plaintiff alleges that Defendants purportedly "rejected" it "[b]ecause the liquidation order did not precisely match the number of units owned." Complaint ¶ 18. The Rules require mutual funds (Defendants included) to price that transaction based on the next-computed NAV after *receipt*, allowing three additional days to complete the transaction. 17 C.F.R. § 270.22c-1(a); *id.* § 240.15c6-1. The letter between the Plan's Trustee, Wachovia, and AFS—*a letter that is referenced in the*

5

*Complaint and therefore is properly considered in this motion to dismiss*[3]—makes this crystal clear. Motion to Dismiss, Exh. A. That the trustee corrected the clerical error to correctly identify the number of mutual fund shares to be sold does not render the initial instruction invalid.

Plaintiff is seeking to do, in effect, what so-called "late traders" illegally did in the mutual fund late trading and market timing scandal that was revealed in 2003. A typical late trading scheme is discussed in *SEC v. Pentagon Capital Management PLC*, 612 F. Supp. 2d 241 (S.D.N.Y. 2009). There, a hedge fund submitted purchase orders prior to 4:00 p.m. eastern time to a broker dealer, which time-stamped them as being received prior to 4:00 p.m. But the broker-dealer's employees, which were acting in collusion with the hedge fund, treated the orders as only tentative, and then decided whether or not to put them through to the mutual fund depending on market developments (usually in overseas stock markets) *after* the 4:00 p.m. close. In effect, the hedge fund, with the collusion of the broker-dealer's employees, was betting on the horse race after it was already run. *See id.*, 612 F. Supp. 2d at 252; *see also id.* at 247-248 (describing late trading and the role of Rule 22c-1 in preventing it).

Here, Plaintiff is seeking to do the same thing by submitting an order on day 1, waiting to see what happened on day 2, and then picking the pricing date after the fact. In *SEC v. Pentagon Capital Management*, the court held that the SEC stated a securities fraud claim against the hedge fund that violated Rule 22c-1 by engaging in a scheme in which it got to decide hours

---

[3] Regardless of Plaintiff's arguments to the contrary, documents, such as the letter attached to Exhibit A of Defendants' Motion to Dismiss, "may be considered in ruling on a 12(b)(6) motion." *Duferco Steel v. M/V Kalisti*, 121 F.3d 321, 324 n.3 (7th Cir. 1997). Plaintiff cites no case in which a district court has been reversed for considering a document on a motion to dismiss that is referenced in the Complaint.

*after the market closed*, and after learning of overseas market developments, whether the purchase order it submitted before the market close would go through. *See id.* at 259-60.[4]

Accordingly, even under Plaintiff's "spin" on the facts, Defendants followed the applicable SEC Rules. They, therefore, could not have breached any alleged ERISA fiduciary duty, and Plaintiff's Complaint must be dismissed with prejudice.

**B.**     **Defendants Were Not ERISA Fiduciaries.**

In any event, because, as Plaintiff admits, the SEC Rules govern the transaction at issue, Defendants necessarily lacked any discretion in determining how to price the Plan's sale. If Defendants, by law, had no discretion, they could not have been ERISA fiduciaries. *See Pohl v. Nat'l Ben. Consult.*, 956 F.2d 126, 129 (7th Cir. 1992) ("ERISA makes the existence of discretion a sine qua non of fiduciary duty."). Because the Investment Company Act of 1940 and the rules promulgated thereunder govern so much of a mutual fund's activities, mutual funds are generally not considered ERISA fiduciaries. *See* ERISA § 3(21)(B); 29 U.S.C. § 1002(21)(B); *see also* H.R. Conf. Rep. No. 93-1280, at 296 (1974) (noting that the reason for the carve out of mutual funds from ERISA is that they are already heavily regulated under the Investment Company Act of 1940 and the regulations (like SEC Rule 22c-1) promulgated thereunder). Because Defendants lacked any discretion over how to price the transaction at issue, they could not be considered fiduciaries under ERISA. Consequently, Plaintiff's claim for

---

[4] Because the hedge fund in *Pentagon* was purchasing shares, it wanted to improperly obtain a *lower* purchase price so that it could profit from overseas market increases after the 4:00 p.m. eastern close. Here, as Plaintiff was selling, it in effect wants to be able to wait until after the close to determine whether the *higher* sales price will be on the day it submitted the order or the day after.

a breach of fiduciary duty under ERISA must be dismissed because the SEC Rules (which Defendants followed) govern this transaction.

Moreover, even if the exemption does not apply, ERISA makes clear that not just anyone involved with the Plan's assets becomes an ERISA fiduciary. Those simply performing ministerial tasks at the direction of another person are unequivocally *not* ERISA fiduciaries. *See Schmidt v. Sheet Metal Workers' Nat'l Pension Fund*, 128 F.3d 541, 547 (7th Cir. 1997) (concluding that a person who "merely performed ministerial tasks and clerical functions" and "had no discretionary authority or control in the tasks . . . assigned" was not an ERISA fiduciary); *see also* 29 C.F.R. § 2509.75-8, D-2 ("[A] person who performs purely ministerial functions . . . for an employee benefit plan . . . is not a fiduciary."). This is because "ERISA makes the existence of discretion the *sine qua non of fiduciary duty*." *Pohl*, 956 F.2d at 129 (emphasis added).

Plaintiff has failed to plead facts that Defendants, even through their "voluntary" acts (Response at 14), became ERISA fiduciaries because according to the Complaint, Defendants never exercised *discretionary* authority or control over the Plan's assets. Wachovia, as the "directed trustee" of the Plan acts with "exclusive *authority* and *discretion* to manage and control the assets of the plan." ERISA § 403(a); 29 U.S.C. § 1103(a) (emphases added). Plaintiff alleges that the trustee submitted an order to AFS on May 1, 2008, and that order directed AFS to price the transaction at issue based on the April 30, 2008 price. *See* Complaint ¶ 21; Motion to Dismiss, Exh. A. The letter ordering AFS to complete the transaction based on the April 30, 2008 NAV specifically notes that it should be considered as AFS's "*authorization* to settle the

[transaction at issue] as of 04/30/2008." Motion to Dismiss, Exh. A.[5]  Accordingly, regardless of any "discussions" that may have occurred before Wachovia sent this letter, it is clear AFS could not act without first getting "authorization" from the Plan's trustee, because the trustee (not AFS) acts with "exclusive *authority and discretion*" regarding the Plan's assets. ERISA § 403(a); 29 U.S.C. § 1103(a) (emphasis added). Defendants' actions as described in the Complaint and the letter referenced therein were simply to follow the directions of the Plan's directed trustee in executing the ministerial task of exchanging one plan asset (shares of TGFA) for another (cash).

Plaintiff's arguments that Defendants *could* have become ERISA fiduciaries through their conduct attack a strawman. Defendants did not argue that it is impossible under any circumstances for mutual funds to become ERISA fiduciaries; rather, Defendants' argument is simply that under the facts as alleged and referenced in the Complaint, Defendants did not have the requisite authority or control over Plan assets because they had *no discretionary decisions* to make regarding the assets. *See Pohl*, 956 F.2d at 129 ("The reason for the [ERISA fiduciary] duty is clearest when the agent has a *broad discretion* the exercise of which the principal cannot feasibly supervise, so that the principal is at the agent's mercy. . . . If the agent has *no discretion* . . . ordinary contract principles generally should suffice.") (emphases added). Many, if not all, of Plaintiff's legal citations note that discretion is required. *See e.g.*, *Mut. Life Ins. Co. of New York v. Yampol*, 840 F.2d 431, 425 ("[A]n individual is a fiduciary to the extent he exercises any

---

[5] Plaintiff notes that the letter has not been authenticated by a declaration but it does not dispute that the letter is referencing the transaction at issue or that it is the document referred to in the Complaint.

*discretionary* authority or control.") (emphasis added).  Defendants indisputably had no discretion in pricing the transaction at issue.

In sum, the Complaint fails to allege sufficient facts demonstrating that Defendants had *discretionary* authority or control over the Plan's assets.  Defendants, therefore, could not be ERISA fiduciaries.  Accordingly, Plaintiff's claim should be dismissed with prejudice.

## III.
## CONCLUSION

For the reasons stated herein and for the reasons stated in Defendants' Motion to Dismiss, Plaintiff's Complaint should be dismissed with prejudice.  Defendants priced the transaction at issue in accordance with the applicable SEC Rules, and they fundamentally lacked the requisite discretionary control or authority over the Plan's assets to become an ERISA fiduciary.

DATED:  July 13, 2009

Respectfully submitted,


By: /s/ Jeffrey B. Bailey
    Jeffrey B. Bailey

| OF COUNSEL: | COUNSEL OF RECORD: |
|---|---|
| GARETH T. EVANS | JEFFREY B. BAILEY |
| email: gevans@gibsondunn.com | email: jbbailey@boselaw.com |
| ANDREW J. DEMKO | PAUL D. VINK |
| email: ademko@gibsondunn.com | email: pvink@boselaw.com |
| GIBSON, DUNN & CRUTCHER LLP | BOSE MCKINNEY & EVANS LLP |
| 333 South Grand Ave. | 111 Monument Circle, Suite 2700 |
| Los Angeles, CA 90071-3197 | Indianapolis, IN  46204 |
| Telephone:  213.229.7000 | Telephone: 317-684-5000 |
| Facsimile:  213.229.7520 | Facsimile: 317-684-5173 |

*Attorneys for Defendant American Funds Service Company and The Growth Fund of America, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2009, a copy of the foregoing Reply Brief in Support of Motion to Dismiss Complaint was served via electronic mail on the following persons by operation of the Court's electronic filing system:

> Thomas J. Costakis
> Lawrence W. Schmits
> Aaron R. Raff
> KRIEG DEVAULT, LLP
> One Indiana Square, Suite 2800
> Indianapolis, IN  46204

> /s/ Jeffrey B. Bailey
> Jeffrey B. Bailey

BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, Indiana  46204
(317) 684-5000 (phone)
(317) 684-5173 (facsimile)

1450721_1/21735-1

11